IN THE COURT OF APPEALS

7/29/97

OF THE

STATE OF MISSISSIPPI


NO. 95-KA-00733 COA


DERRICK PRUITT A/K/A DERRICK SOLOMAN

PRUITT APPELLANT

v.

STATE OF MISSISSIPPI APPELLEE


THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B


TRIAL JUDGE: HON. EUGENE M. BOGEN

COURT FROM WHICH APPEALED: WASHINGTON COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: RABUN JONES

ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL

BY: W. GLENN WATTS

DISTRICT ATTORNEY: FRANK CARLTON

NATURE OF THE CASE: CRIMINAL-FELONY

TRIAL COURT DISPOSITION: ARMED ROBBERY HABITUAL OFFENDER:SENTENCED TO SERVE A TERM OF 18 YRS IN THE MDOC, WITHOUT ELIGIBILITY FOR PAROLE OR OTHER REDUCTION IN SENTENCE; PAY ALL COURT COSTS, $192.50

MOTION FOR REHEARING FILED: 8/13/97

CERTIORARI FILED: 11/4/97

MANDATE ISSUED: 2/12/98

BEFORE BRIDGES, C.J., COLEMAN, AND SOUTHWICK, JJ.

SOUTHWICK, J., FOR THE COURT: Derrick Pruitt was convicted of armed robbery after a bench trial in Washington County Circuit Court. He appeals an evidentiary ruling based on hearsay and argues the court improperly considered matters outside the record in determining the credibility of the defendant. Pruitt, pro se, raises ten additional issues. We find no reversible error and affirm.

## FACTS

The following are the facts that are most consistent with the verdict. Rodney Pierce went to a Double Quick convenience store and purchased gasoline for his car. As he left the store after paying for the gasoline, he was followed by Derrick Pruitt. Pruitt, dressed in a dark jumpsuit with a hood covering his head, pointed a gun at Pierce and demanded his wallet. Pierce complied. Pruitt then told Pierce to run back into the store and not to look back.

At trial, Pruitt admitted to robbing Pierce of his wallet, but denied that he was armed. He argued that he was entitled to the money in Pierce's wallet because Pierce had received cocaine from him earlier that evening and not paid for it. Pierce denied receiving cocaine from Pruitt. A video tape made from inside the convenience store showed some of the incident, but did not reveal the outside encounter between Pierce and Pruitt.

Pruitt waived a jury trial and was convicted by the court of armed robbery.

## DISCUSSION

I. *Hearsay regarding victim's activities immediately prior to robbery*

Pruitt's defense was that he had taken Pierce's wallet without permission, but that no gun nor threats were used. Pruitt testified to his quick hands and athletic ability, and informed the court that he had snatched the wallet from Pierce's hip pocket without violence. Pruitt testified to this being the taking of something already his, since he alleged that Pierce had earlier that evening, at 9:20 or 9:30 p.m., been sold drugs without paying Pruitt for them. We read no contrition nor concern in the words, but

a matter-of-fact explanation of why Pruitt was owed the money.

Part of the defense that this was merely self-help collection of debts, and definitely not armed robbery, required that Pierce be placed in a drug transaction not long before the robbery at the Double Quick. To rebut the testimony, the State called Russell Cantrell. Cantrell had no personal knowledge of a robbery, but in essence provided an alibi for the robbery victim to the drug transaction story. He testified that Pierce was working out at a gym with him at 9:20 p.m. on the night Pierce was allegedly robbed at 10:35 p.m. Pruitt's objection to the evidence is that Cantrell's ability to join the date of the robbery to the date that he and Pierce were at the gym, was allegedly based on hearsay. On the night discussed in Cantrell's testimony, the two men exchanged phone numbers so that they could make arrangements in the future to lift weights together. A week or two after this event, which was over seven months before trial, Pierce told Cantrell that the night that they had met and exchanged phone numbers was the night that he was robbed. Cantrell on cross-examination said that since he was at the gym four nights a week, the only way that he could link the date that he met Pierce with the date of the robbery, was due to his subsequent conversation with Pierce.

The State first argues that no objection based on hearsay was lodged at trial. True, the word "hearsay" was not used. What Pruitt's counsel raised was an "objection to what Rodney [Pierce] told" the witness. There may be crisper ways to make this objection, but these words raised with the trial court the hearsay issue. *See Jordan v. State*, 513 So. 2d 574, 581 (Miss. 1987). The objection was overruled.

The State also argues that the witness independently recalled the date. That is not an accurate representation of the evidence. What Cantrell recalled was that he and Pierce had exchanged phone numbers, and that a week or two later Pierce told him that he was robbed that same night. There was no recollection independent of Pierce's hearsay that he and Pierce were at this gym lifting weights on November 29, 1994, which was the date of the robbery.

Cantrell's testimony therefore was not relevant, since hearsay alone permitted Cantrell to state that his evidence related to the night of the robbery. To determine the impact of this testimony and whether its admission was harmful, we must first recall that Cantrell was a rebuttal witness on a factual issue raised by Pruitt. Whether the State could locate anyone to testify as to Pierce's actions prior to the encounter at the Double Quick is not fundamental to guilt or innocence in this case. Pruitt admits to taking Pierce's wallet. The only question any of this relates to is Pierce's credibility. The only dispute in the whole trial on any of the elements of the crime was on one point: did Pruitt take the money after displaying a gun, or did he pick Pierce's pocket without putting the victim in fear of bodily injury? Pierce is the only witness who testified that he saw a gun. Pruitt is the only witness who stated that Pierce's pocket was picked.

The court announced his finding of guilt, stating that he found Pruitt's story to be a "pack of lies." The judge made no reference to Cantrell's testimony regarding being at the gym with Pierce. The court explained its reasoning:

Pierce testified that he was held up at gunpoint. In reviewing the [store's video] tape -- I believe we witnessed this incident about four times -- . . . I counted about six seconds elapsed from the time that you see the defendant leave the area where he was lurking until the time that you see the victim

beginning to run back into the store and you see Pruitt beginning to run down the alley. It certainly must be a frightening thing to have a gun pointed at your face by someone demanding your wallet . . . The defendant pointed it at him placing him in fear, and for that reason only did he surrender his wallet. I find that the State has met the burden of proving beyond a reasonable doubt the elements of armed robbery and find that the defendant Derrick Pruitt is guilty as charged . . .

Pruitt's story is completely inconsistent with what was shown on the video tape. That was the basis for the court's decision. No one disputes the trial court's statement that only six seconds elapsed between when Pruitt is viewable through the window outside the store as he starts to run towards Pierce, at which time the two men are no longer on the video, and the time that Pierce reappears on the video beginning to run back inside the store. We have reviewed the video and find the timing to be as the trial court estimated. A review of Pruitt's version follows:

When he comes out of the store, I said, "hey, man," I said, "come here and let me holler at you for a second," like that there. "Where's the money at, man?" And he said -- he looked -- he turned and looked at me, but it was like he didn't see me, and he kept going, and he did something to his car. I said, "Hey man, you gonna hear me about the money?" And he ain't say nothing. That's when I reached into the wallet out of his pocket. I took the wallet out of his pocket, and I started walking around his car first, and he said, "Hey, man," and when he said hey, man, I just started running, you know.

Q. Well, let me ask you this. At any time did you ever put your hand on his body and push him?

A. I didn't touch him. I didn't -- I thought he was tripping [on drugs]. I didn't say nothing to him but, you know, where's the money at, or where's the stuff at, or what not, and he act like he didn't want to answer, so when he bent over [at the car] and I seen his wallet was sticking like about this far up [later explained to be three inches] out of his pocket, and I just reached and got the wallet, you know.

On cross-examination, Pruitt further detailed what he said happened during the six seconds from when Pruitt first started running towards Pierce, and Pierce started running back to the store:

Q. When you came around the car, isn't it accurate he was in between his car and the gas pumps when you took his wallet?

A. No. It was not in between; he was at the rear. He wasn't in between the car and the gas pumps. He was at the rear of the car. He had stopped. I told you he had his gas top or something. He was fiddling with his, you know, something back --

A. He had already pumped his gas.

A. Yeah, but he was fiddling with something back there.

Q. And so after you snatched his wallet, as you say --

A. As what happened.

Q. -- what did you do? You ran past him, right?

A. I ran right past him, and he came right around me and turned right and went straight back to the store. . . .

Q. How could you get past him without touching him? I mean, it's pretty narrow space. You've got gas pumps right there. You got his car right there.

A. I used to be a running back. I was one of the best running backs in this city at Solomon Junior High School, and to slip a person is nothing. I could slip past you in that chair right there.

The trial court's conclusion that Pruitt's story of the event was impossible when viewed against the video tape was the only possible conclusion. Pruitt's testimony described a one-act play, with two speaking parts and five separate events --Pruitt's following Pierce from the store door back across the drive and gas pump area to his car, during which stroll he asked at least two questions and waited for an answer each time; Pierce's bending over and "fiddling" with something at the car; Pruitt's observing this and deciding to rush up to Pierce and grab his wallet; Pierce's realizing what had happened, straightening up and yelling at Pruitt; then the run from the gas pumps back across the drive to inside the store. Those events just could not have happened in six seconds. It takes more time than that just to read the foregoing summary of the events. Of the two versions of events, the only one that was credible was that Pruitt accosted Pierce almost as soon as he got out of the store and demanded his wallet. Pierce threw it at him and ran back into the store.

We agree with Pruitt that the trial court allowed inadmissible hearsay into evidence over objection. We cannot conclude, however, that the error affected the fairness of the trial.

*II. Trial court's observation that Pruitt's family laughed at his testimony*

Pruitt's counsel raises another issue regarding a comment made by Judge Bogen as he stated his reasons for finding guilt. Among the judge's statements was "I conclude that [defense witnesses'] testimony may be summarized in three words- 'pack of lies' are those three words. In fact, the defendant's testimony can be described as laughable as evidenced by the fact that his own family sitting out in the courtroom was laughing at the preposterous nature of his testimony." Pruitt calls this hearsay because the record does not reflect laughter.

The court was not acknowledging that he factored in the courtroom audience's response to testimony. We have described above why the court found Pruitt unbelievable. Though remarking on what occurred outside the statements and documents introduced into evidence was unnecessary, the

court was merely noting that evidence he rejected because it was incredible, appeared also to be viewed in that light by some in attendance in the courtroom. Whether the judge was right or wrong in that observation, he did not make his perception of Pruitt's family the basis for his ruling. We find no error.

*III. Cumulative error*

Pruitt argues that should neither of the above by itself be reversible, then they should be considered cumulatively and reversed. Because we have already discussed the issues separately, we will not discuss them again except to say that we find that the issues when considered separately or together, do not constitute reversible error.

*Pro se issues*

Pro se, Pruitt raises ten additional issues. Our system of appellate review provides for ample representation by counsel, either court-appointed or retained. Counsel prepares a brief setting out the errors that arguably require reversal. Pruitt's counsel has presented an able if ultimately unconvincing brief in defense of his client. We have reviewed Pruitt's pro se issues and determine that none of them require reversal nor merit analysis in this opinion. *See Johnson v. State*, 449 So. 2d 225, 225 (Miss. 1984).

**THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY AND SENTENCE AS A HABITUAL OFFENDER OF 18 YEARS WITH NO PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS ARE TAXED TO WASHINGTON COUNTY.**


**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, HINKEBEIN, KING, AND PAYNE, JJ., CONCUR.**